# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| TERRI L. JAMES, | : | |
| | : | |
| Crown City, Ohio 45623 | : | Civil Action No.17-cv-582 |
| | : | |
| LISA E. REUTER, | : | |
| | : | **COMPLAINT** |
| Gallipolis, Ohio 45631 | : | |
| | : | |
| and | : | |
| | : | JUDGE |
| SUE E. MCKITRICK, | : | |
| | : | MAGISTRATE JUDGE |
| Gallipolis, Ohio 45631 | : | |
| | : | |
| and | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GALLIA COUNTY, OHIO, | : | |
| c/o Karen L. Sprague | : | |
| County Administrator | : | |
| 18 Locust St., Rm. 1292 | : | |
| Gallipolis, OH 45631, | : | |
| | : | |
| and | : | |
| | : | |
| JASON HOLDREN, in both his official | : | |
| and individual capacities, | : | |
| Gallia County Prosecutor | : | |
| 18 Locust St. | : | |
| Gallipolis, OH 45631, | : | |
| | : | **JURY DEMAND ENDORSED HEREON** |
| Defendants. | : | |

I.     **Preliminary Statement**

1.     Plaintiffs seek declaratory, equitable, injunctive, and monetary relief for the violations of their First and Fourteenth Amendments rights when, upon the election of an officeholder from a different political party than the incumbent, Defendants terminated them because of their well-known political activities and campaign support for the incumbent and actual or presumed membership in the political party with which the incumbent was affiliated even though their political beliefs, affiliation, and activities were not appropriate factors in measuring their ability to competently and loyally perform their job duties for the incoming officeholder in their low-level positions – secretary, part-time investigator, and Victim Assistance Program Director – where they had performed job duties without discretion of any political significance.

II.    **Jurisdiction**

2.     This Court has jurisdiction over this action by virtue of 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

3.     Declaratory, equitable, and injunctive relief is sought pursuant to 28 U.S.C. §§ 2201; 2202 and 42 U.S.C. § 1983.

4.     Compensatory and, against Defendant Holdren, punitive damages may be awarded under 42 U.S.C. § 1983.

5.     Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54.

6.     Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1 because the events or omissions giving rise to the claims occurred in Gallia County, Ohio.

III.   **Parties**

7. Plaintiff Lisa E. Reuter worked for the Gallia County Prosecutor's Office from November 13, 1990, until she was terminated in early January 2017, from the full-time position of Victim Assistant Program Director, which she had been competently performing and for which she was earning $27.00 an hour plus retirement and other fringe benefits.

8. Plaintiff Sue E. McKitrick worked for the Gallia County Prosecutor's Office intermittently from September 1983, until she was terminated in early January 2017, from the part-time (24 hours a week) position of investigator, which she had been competently performing and for which she was earning $23.87 an hour plus retirement and other fringe benefits.

9. Plaintiff Terri L. James worked for the Gallia County Prosecutor's Office from January 4, 1988, until she was terminated in early January 2017, from the full-time position of secretary, which she had been competently performing and for which she was earning $25.43 an hour plus retirement and other fringe benefits.

10. Defendant Gallia County is a political subdivision of the State of Ohio pursuant to Chapter 2744, Ohio Revised Code; funds and uses as a law enforcement entity the Gallia County Prosecutor's Office, which, at all times material to this action, employed Plaintiffs until their termination; left to the Gallia County Prosecutor the creation and adoption of its employment policies for that Office; is a "person" under 42 U.S.C. §1983; and acted under color of law.

11. Defendant Jason Holdren, who is being sued in both his individual and official capacities, is the Gallia County Prosecutor; establishes employment policies for the Gallia County Prosecutor's Office and on behalf of Defendant County its employment policies for that Office; personally decided to terminate Plaintiffs when he took office in January 2017 having won election as a candidate of the Republican Party; knew of their political activities and

campaign support for his opponent and actual or presumed membership in the Democratic Party; is a "person" under 42 U.S.C. §1983; and acted under color of law.

## IV. Facts

12. As Victim Assistance Program Director, Plaintiff Reuter wrote the annual grant proposal to secure funds under the State of Ohio's Victim Assistance Act, which funds were entirely from the State of Ohio without federal funding and were distributed on a competitive basis to each County which applied.

13. The Ohio Attorney General's Office administers the State of Ohio's Victim Assistance Act on a non-partisan basis.

14. Funding under the State of Ohio's Victim Assistance Act is specifically limited in amount and purpose to certain expenses and activities.

15. The Program Director in each County Prosecutor's Office is responsible for distributing funds to victims of crime, assisting the victims, and preparing reports to the Ohio Attorney General's Office on those distributions.

16. Funds are distributed and assistance provided on a non-partisan basis.

17. The Program Director has only ministerial discretion in writing the annual grant proposal, distributing the funds, assisting the victims, and preparing the required reports.

18. The Program Director does not deviate from the forms and content developed by the Ohio Attorney General's Office for annual grant proposals.

19. The Ohio Attorney General's Office awards crime victims compensation and grants through the Crime Victims Reparations fund pursuant to R.C. Sec. 2743.191(A), including, but not limited to, the compensation of any personnel needed to administer sections 2743.51 to 2743.72 of the Revised Code.

20. The Program Director neither selects victims to whom funds are distributed nor sets the amount of the distribution based on any criteria other than those established by the Ohio Attorney General's Office.

21. The Program Director does not assist victims in any ways other than those established by the Ohio Attorney General's Office.

22. Plaintiff Reuter's office provided whatever assistance was necessary to victims, including, but not limited to, funds available through the State of Ohio's Victim Assistance Act.

23. Plaintiff Reuter never deviated from the forms or content required by the Program.

24. In 2016, approximately $57,000 was received under the State of Ohio's Victim Assistance Act.

25. Funding received under the State of Ohio's Victim Assistance Act is only for items approved on the grant award notification and acceptance form and is not available for any other expenses of the Prosecutor's Office.

26. Plaintiff Reuter spent no appreciable time representing the Prosecutor's Office in the local community about the State of Ohio's Victim Assistance Act and Gallia County's implementation of the Act.

27. The Prosecutor's Office used Plaintiff Reuter for other duties, mainly processing delinquent tax collections and foreclosure filings, when time permitted, and those duties were ministerial in nature.

28. Plaintiff Reuter had never been notified that she was unclassified under the civil service system.

29. Defendant Holdren has continued and anticipates continuing the Victim Assistance Program and the role of the Program Director in nearly the identical way to how it operated when Plaintiff Reuter was the Program Director.

30. Defendant Holdren has continued and anticipates continuing to use the Victim Assistance Program Director to perform ministerial duties, such as processing delinquent tax collections and foreclosure filings, when time permits.

31. Defendant Holdren does not envision having a Victim Assistance Program Director establish policy or exercise discretion of any political significance in administering the Program.

32. Defendant Holdren does not envision using the Victim Assistance Program Director to spend any appreciable time representing the Prosecutor's Office in the local community about the State of Ohio's Victim Assistance Act and Gallia County's implementation of the Act.

33. Defendant Holdren has hired a Victim Assistance Program Director whose political activities and campaign support were not for his opponent and whose political party membership was either Republican or Independent.

34. The Victim Assistance Program Director Defendant Holdren has hired does not perform job duties with discretion of any political significance.

35. As a part-time investigator, Plaintiff McKitrick, using information provided by law enforcement officers, prepared routine responses to requests for discovery and typed subpoenas in criminal cases, filed documents in court, and generally participated in trial preparation by performing routine secretarial and clerical tasks, but she did not perform any of the following tasks: interview witnesses, become involved with juvenile or civil matters or

welfare fraud cases, otherwise confer with legal counsel or Sheriff's investigators, otherwise prepare cases for trial or assist and update criminal investigations, or assist with interviewing minor children who had been victims of or witnesses to felony crimes.

36. Plaintiff McKitrick made no policy regarding prosecution, discovery, interviewing, or her other duties.

37. Plaintiff McKitrick followed the standards and criteria established by prosecuting attorneys for the office.

38. Plaintiff McKitrick never deviated from the forms or content required by the office.

39. Plaintiff McKitrick is neither an attorney nor has been trained as a paralegal.

40. Plaintiff McKitrick performed her duties on a non-partisan basis.

41. Plaintiff McKitrick had never been notified that she was unclassified under the civil service system.

42. Defendant Holdren has continued and anticipates continuing the use of an investigator in nearly the identical way to the way the investigator operated when Plaintiff McKitrick was the investigator.

43. Defendant Holdren has continued and anticipates continuing to use the investigator to perform ministerial duties under the supervision and control of prosecuting attorneys in the office.

44. Defendant Holdren does not envision having an investigator establish policy or exercise significant discretion in investigating.

45. Defendant Holdren has hired an investigator whose political activities and campaign support were not for his opponent and whose political party membership was either Republican or Independent.

46. The investigator Defendant Holdren has hired does not perform job duties with discretion of any political significance.

47. As a secretary, Plaintiff James processed legal papers drafted or directed by the Prosecutor and the two Assistant Prosecutors and performed ministerial duties, including scheduling and facilitating the monthly grand jury, filing papers, typing, answering telephones, paying bills, and balancing the office checkbook.

48. Plaintiff James was the only secretary in the office.

49. Plaintiff James' specific daily duties consisted of checking calendars, pulling files, and typing criminal charges, juvenile charges, guilty plea forms, continuances, answers to motions for judicial releases, governor's warrants, subpoenas, contracts, township resolutions, correspondence to the county commissioners, deeds, and answers for foreclosure complaints; answering phones, taking messages for the Prosecutor and staff, filing documents with the clerk of courts and juvenile court, preparing vouchers for submission to the county commissioners' office; occasional assistance to Plaintiff Reuter in preparation of victim's consent forms, occasional assistance to Plaintiff McKitrick in preparation of supplemental discovery, and occasional typing for other Prosecutor's staff.

50. Plaintiff James made no policy about her secretarial chores or their performance.

51. Plaintiff James followed the standards and criteria established by prosecuting attorneys for the office.

52. Plaintiff James never deviated from the forms or content required by the office.

53. Plaintiff James performed her duties on a non-partisan basis.

54. Plaintiff James was never notified that she was unclassified under the civil service system.

55. Defendant Holdren has continued and anticipates continuing the use of a secretary in nearly the identical way to the way the secretary operated when Plaintiff James was the secretary.

56. Defendant Holdren has continued and anticipates continuing to use the secretary to perform ministerial duties under the supervision and control of prosecuting attorneys in the office.

57. Defendant Holdren does not envision having a secretary establish policy or exercise significant discretion in performing the duties of a secretary.

58. Defendant Holdren has hired a secretary whose political activities and campaign support were not for his opponent and whose political party membership was either Republican or Independent.

59. The secretary Defendant Holdren has hired does not perform job duties with discretion of any political significance.

60. Defendant Holdren would have been able to supervise the job performance by each Plaintiff to ensure that she competently performed her job duties in the same way she had historically done.

61. Defendant Holdren lacked sufficient observation of the way each Plaintiff performed her job duties to form an opinion about whether she competently performed them or was likely to do so in his administration.

62. Defendant Holdren had neither knowledge nor suspicion that any Plaintiff had failed to competently perform her job duties in the Prosecutor's Office or would be unlikely to do so in his administration.

63. Plaintiffs had superbly performed their job duties when Jeff Adkins was the Gallia County Prosecutor.

64. Mr. Adkins ran for re-election as a Democratic candidate.

65. Each Plaintiff engaged in political campaign activities supporting Mr. Adkins, including printing and posting signs; going door-to-door distributing literature and seeking votes wearing his campaign T-shirts; creating fundraising baskets with goods one or more Plaintiffs donated; and appearing on parade floats and at fundraisers wearing his campaign T-shirts.

66. Each Plaintiff openly supported him on social media, such as Facebook.

67. Each Plaintiff was aligned with the Democratic Party and presumed by Defendant Holdren to be registered members of the Democratic Party.

68. The political campaign activities in which each Plaintiff engaged in were done on their own time, with their own supplies, at their own expense, and outside the Prosecutor's Office.

69. Defendant Holdren knew about most of the political campaign activities each Plaintiff engaged in and observed each Plaintiff while he was getting ready to or participating in parades or attending a fundraiser, such as one for the Fire Department.

70. Defendant Holdren heard from friends, campaign workers, and supporters that each Plaintiff had engaged in political campaign activities supporting his opponent.

71. Defendant Holdren's wife also personally observed some of political campaign activities each Plaintiff engaged in.

72.     Gallipolis, Ohio is a small town, and knowledge about who supports whom in a political campaign is widespread among those who are politically active.

73.     Defendant Holdren was personally acquainted with Plaintiffs Reuter and James and, though estranged for several years, the son of Plaintiff McKitrick.

74.     Defendant Holdren assumed that each Plaintiff could not continue to perform her job duties competently when he became Prosecuting Attorney because of her political campaign activities in support of Mr. Adkins and her actual or presumed affiliation with the Democratic Party.

75.     As a proximate result of Defendants' actions and inactions, each Plaintiff suffered emotional distress, anguish, frustration, and humiliation.

76.     Despite a reasonably diligent effort to secure employment comparable to her position with Defendants, each Plaintiff has been unable to do so and has lost the level of wages, benefits, and other compensation she had been earning as their employee.

77.     Defendant Holdren knew about, or absent reckless disregard would have known about, his and Defendant County's obligation under the First and Fourteenth Amendments to make employment decisions based on appropriate criteria for measuring performance.

78.     Defendant Holdren knew about, or absent reckless disregard would have known about, the impropriety of his and Defendant County's negative consideration of Plaintiffs' political activities and campaign support for the re-election campaign of the incumbent and actual or presumed membership in the political party with which that incumbent was affiliated in deciding whether to retain them.

79. At least a motivating factor in Defendants' decision to terminate Plaintiffs was their political activities and campaign support for the re-election campaign of the incumbent and actual or presumed membership in the political party with which that incumbent was affiliated.

## V. Claim for Relief: Violation of the First and Fourteenth Amendments

80. Paragraphs 1 through 81 above are realleged and incorporated herein.

81. By terminating Plaintiffs at least in part due to their political activities and campaign support for the re-election campaign of the incumbent and actual or presumed membership in the political party with which that incumbent was affiliated, Defendants violated their rights under the First and Fourteenth Amendments.

## VI. Prayer for Relief

WHEREFORE, Plaintiffs pray that this Court:

a. declare that Defendants jointly and severally have violated their civil rights, inflicting on each of them emotional distress, anguish, frustration, humiliation, and lost wages, benefits, and other compensation;

b. order such equitable relief, including reinstatement or front pay, as will make each Plaintiff whole for Defendants' unlawful conduct along with monetary relief of pre- and post-judgment interest; costs; and reasonable attorneys' fees;

c. award to Plaintiffs compensatory damages against Defendants in excess of $25,000, and punitive damages against Defendant Holdren in excess of $25,000; and

d. grant such other relief as the Court may deem appropriate.

Respectfully submitted,

By: */s/ John S. Marshall*
John S. Marshall (0015160)
(*jmarshall@marshallforman.com*)
Edward R. Forman (0076651)

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

(*eforman@marshallforman.com*)
Samuel M. Schlein (0092194)
*(sschlein@marshallforman.com)*
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

MICHAEL A MOSES (0025243)
100 East Broad Street, Suite 1350
Columbus, Ohio 43215
(614) 224-7294- Telephone
michaelmoses@moseslawllc.com

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs request a trial by a jury of eight (8) persons.

By: */s/ John S. Marshall*
John S. Marshall (0015160)